**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **GUANGLI ZHANG,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No. 26-1689 (JEB)** |
| **LEKESIA LAVETTE DIXON,** *et al.*, | |
| **Defendants.** | |

**MEMORANDUM OPINION**

This case concerns a gestational-surrogacy arrangement through which Plaintiff Guangli Zhang became a father of twins.  In his telling, Zhang was defrauded and deceived by every major participant in that arrangement — the surrogate mother, the surrogacy agency and its director, the delivering physician and the hospital where his children were born, and an escrow company that facilitated payments throughout the process.  Proceeding *pro se*, he brought this action against those parties for their purported fraud.  The escrow company — SeedTrust Escrow, LLC — now moves to dismiss for lack of subject-matter and personal jurisdiction and for failure to state a claim.  It also asks the Court to declare Zhang a vexatious litigant subject to a pre-filing injunction.

Finding that personal jurisdiction does not exist for SeedTrust, the Court grants its Motion.  The Court declines, however, to declare Plaintiff a vexatious litigant.

## I.    Background

The Complaint here offers very little by way of detail.  The Court nevertheless draws what it can — as it must at this stage — from that pleading.  See Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  Because Plaintiff proceeds *pro se*, the Court also

1

considers assertions contained in his Opposition to the Motion to Dismiss.  See Brown v. Whole Foods Mkt. Grp., Inc., 789 F.3d 146, 152 (D.C. Cir. 2015).

At some unspecified time, Zhang entered into a surrogacy arrangement culminating in the birth of twin children.  See ECF No. 1 (Compl.) at ECF p. 9.  On May 18, 2026, he filed this action against six parties to that arrangement: (1) the surrogate mother, Lekesia Lavette Dixon (located in Texas); (2) the surrogacy agency, Tiny Sprouts Surrogacy, Inc. (located in either California or Texas, compare id. at 7, with ECF No. 17 (Def. Address Change)); (3) its director, Bridget deZeeuw (also in California or Texas); (4) Ascension Providence Hospital, where the children were born (located in Texas); (5) Dr. Casey A. Leamon, the delivering obstetrician at that hospital (also in Texas); and (6) an escrow company, SeedTrust Escrow, LLC (located in Florida).  See Compl. at ECF pp. 1, 6–8, 11, 13, 17, 21, 28, 35.  Although Plaintiff does not reveal where he resided during the events underlying this dispute, he now lives in D.C.  Id. at ECF p. 11; see also ECF No. 12 (Opp.) at ECF p. 2 (indicating that Plaintiff moved here in February 2025).

Zhang alleges that Dixon, Tiny Sprouts, deZeeuw, Ascension, and Leamon lied to him about how Dixon delivered the children.  Id. at ECF pp. 9–35.  He maintains that this misrepresentation, together with falsified receipts issued by Tiny Sprouts and payments accepted by Dixon, amounts to fraud.  Id.  As to SeedTrust, Plaintiff contends that the company (1) failed to authenticate the fabricated receipts, (2) released escrowed funds to Dixon and Tiny Sprouts despite Zhang's sounding the alarm on the other Defendants' purported fraud, and (3) ultimately closed Plaintiff's account without refunding him for the funds he paid based on the fabricated receipts.  This, too, in Zhang's telling, constitutes fraud.  Id. at ECF pp. 9, 35, 37, 39.

2

Before filing this action, Zhang sued SeedTrust and three of our same Defendants in D.C. Superior Court on similar grounds.  Id. at ECF p. 10.  That court granted SeedTrust's motion to dismiss for lack of personal jurisdiction and failure to state a claim.  Zhang v. Dixon, No. 2025-2137, Oral Ruling (D.C. Super. Ct. May 14, 2026); see also Compl. at ECF p. 10.  Zhang's current Complaint largely cites federal criminal statutes related to his fraud allegations.  Id. at ECF pp. 3, 14–40.  SeedTrust now moves to dismiss for lack of subject-matter jurisdiction and personal jurisdiction and failure to state a claim.  See ECF No. 10 (MTD).

## II.    Legal Standard

When a defendant brings a Rule 12(b)(1) motion to dismiss, the plaintiff must demonstrate that the court indeed has subject-matter jurisdiction to hear his claims.  See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); US Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000).  "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion [also] imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority."  Grand Lodge of Fraternal Ord. of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  In policing its jurisdictional borders, the court treats the complaint's factual allegations as true and grants the plaintiff the benefit of all reasonable inferences.  See Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

Under Rule 12(b)(2), a defendant may move to dismiss if the court lacks personal jurisdiction over it.  The plaintiff bears the burden of establishing such jurisdiction, see Erwin-Simpson v. AirAsia Berhad, 985 F.3d 883, 888 (D.C. Cir. 2021), and its requirements "must be met as to each defendant."  Rush v. Savchuk, 444 U.S. 320, 332 (1980).  The Court resolves factual discrepancies in favor of the plaintiff.  Crane v. N.Y. Zoological Soc'y, 894 F.2d 454,

456 (D.C. Cir. 1990).  Conclusory statements, however, are insufficient to satisfy the plaintiff's burden.  IMAPizza, LLC v. At Pizza Ltd., 334 F. Supp. 3d 95, 107–08 (D.D.C. 2018).  When personal jurisdiction is challenged, a court may look beyond the four corners of the complaint to other evidence.  See Sharp Corp. v. Hisense USA Corp., 292 F. Supp. 3d 157, 165–66 (D.D.C. 2017).

Rule 12(b)(6), meanwhile, provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  Although a plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

## III.    Analysis

The Court begins with the threshold jurisdictional issues and then turns to Defendant's vexatious-litigant request.

### A.    Subject-Matter Jurisdiction

Subject-matter jurisdiction defines the categories of disputes a federal court may hear. Plaintiff here invokes one jurisdictional basis — federal question, see Compl. at ECF p. 3 — which encompasses "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Whether such jurisdiction exists is governed by the "well-pleaded complaint rule."  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  That is, "a suit

'arises under' federal law" within the meaning of § 1331 "when the plaintiff's statement of his own cause of action shows that it is based upon [federal law]." Vaden v. Discover Bank, 556 U.S. 49, 60 (2009) (alteration in original) (quotation marks and citation omitted).

Here, Zhang rests his claims against SeedTrust on various criminal statutes — including 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), and § 1349 (attempted fraud); and 21 U.S.C. § 848 (drug trafficking) — as well as 31 U.S.C. § 3729, which imposes civil liability for defrauding the U.S. Government. All the statutes he invokes are federal, thereby checking the well-pleaded-complaint box and, in turn, establishing federal-question jurisdiction. See, e.g., Johnson v. Bow Wave LLC, 2026 WL 1601461, at *2 (D.D.C. June 4, 2026) (holding that "[n]othing more [was] needed" to establish federal-question jurisdiction where plaintiff broadly alleged violations of federal law and invoked Title VII).

Defendant, for its part, argues that subject-matter jurisdiction is absent because the criminal statutes lack private rights of action and suits under 31 U.S.C. § 3729 must be brought "by, or on behalf of, the U.S. government," whereas Zhang has filed this action on his own behalf. See MTD at 12. That argument, however, confuses a court's authority to hear the claims — a matter of jurisdiction — with Plaintiff's ability to bring them, a question for the merits. See 5B Wright & Miller's Federal Practice & Procedure § 1350 (4th ed. Apr. 2026 update) (distinguishing between 12(b)(1) and 12(b)(6) scopes). True, there are rare circumstances in which the implausibility of a plaintiff's complaint may warrant dismissal on subject-matter-jurisdiction grounds, but that is reserved for "fanciful factual allegations," not "legal[] deficien[cy]." Best v. Kelly, 39 F.3d 328, 331 n.5 (D.C. Cir. 1994). This Court therefore has subject-matter jurisdiction.

B.        Personal Jurisdiction

Personal jurisdiction, by contrast, asks whether a particular defendant may be haled into court.  See Kopff v. Battaglia, 425 F. Supp. 2d 76, 80 (D.D.C. 2006).  It comes in two forms — general and specific — each of which must meet the requirements of the Constitution's Due Process Clause.  See United States v. Ferrara, 54 F.3d 825, 828 (D.C. Cir. 1995); Daimler AG v. Bauman, 571 U.S. 117, 121–22 (2014).  Plaintiff appears to assert both here, see Compl. at ECF p. 36, but prevails on neither.

General jurisdiction exists when a defendant's contacts with the forum are so "continuous and systematic" as to render it "essentially at home" there, regardless of whether those contacts gave rise to the underlying suit.  Daimler, 571 U.S. at 127 (quotation marks omitted).  For corporations, that ordinarily translates to the defendant's "place of incorporation" or its "principal place of business."  Id. at 137.  As SeedTrust is headquartered and has its principal place of business in Florida, general jurisdiction does not lie here.  See ECF No. 10-1 (Exhs.), Exh. A (Declaration of Jennifer Via), ¶¶ 2–3; MTD at 7, 9–10; see also Compl. at ECF p. 36 (Plaintiff acknowledging that SeedTrust is "from Florida").

That leaves specific jurisdiction, which permits courts to adjudicate claims arising out of a defendant's contacts with the forum state.  See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (noting that specific jurisdiction covers only those "issues deriving from, or connected with, the very controversy that establishes jurisdiction") (quotation marks omitted).  Courts typically first assess whether "jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process."  GTE New Media Servs. Inc. v. BellSouth Corp., 199 F.3d 1343, 1347 (D.C. Cir. 2000).

Our city's long-arm statute enumerates certain contacts that are sufficient to bring a non-resident defendant into D.C. court.  See D.C. Code § 13-423(a).  Plaintiff quotes a single subsection of the statute, authorizing "personal jurisdiction if there is any basis consistent with the United States Constitution."  Id., § 13-423(a)(7)(E); Compl. at ECF p. 36.  He omits preceding language establishing that the subsection applies only to claims arising from a defendant's "marital or parent and child relationship in the District."  § 13-423(a)(7).  Yet SeedTrust has never had such a relationship with anyone in D.C. — or anywhere for that matter.  As a corporation, it can neither wed nor have children.  Zhang attempts to secure his position by insisting that the personal-jurisdiction inquiry "applies to [him], not the defendant."  Opp. at ECF p. 1.  But he misunderstands the law: it is SeedTrust's contacts that count here, not his.  See Daimler, 517 U.S. at 127.  And the laws of metaphysics — not to mention biology — mean that his theory lies beyond this particular long arm's reach.

Nor do any other bases for jurisdiction appear in the record.  For one, there is no indication that SeedTrust's dealings with Zhang implicate D.C. in any way.  Indeed, both parties place Zhang in New York during his course of business with Defendant.  See MTD at 7–9; Via Decl., ¶¶ 8–9; Opp. at ECF p. 2.  Defendant further avers that it has never operated or conducted business in D.C. and has no employees, property, or bank accounts here.  See Via Decl., ¶¶ 4–7.  The Court thus lacks personal jurisdiction over SeedTrust and so will dismiss it from this case.

*      *      *

Although the Court will grant SeedTrust's Motion on jurisdictional grounds, it pauses briefly to note that Defendant's 12(b)(6) arguments are likewise well taken.  As Defendant points out, almost all of the statutes Zhang invokes against it are criminal in nature and provide no private right of action, without which Plaintiff cannot prevail.  See MTD at 14; Compl. at ECF

7

pp. 37–40 (citing 18 U.S.C. §§ 1341, 1343, and 1349, as well as 21 U.S.C. § 848).  The remaining one includes various conditions that Plaintiff does not satisfy here.  See Compl. at ECF p. 38 (citing 31 U.S.C. § 3729); see also, e.g., 31 U.S.C. § 3730(b)(1) (requiring that *qui tam* suits under § 3729 "be brought in the name of the Government"); Walsh v. JPMorgan Chase Bank, N.A., 75 F. Supp. 3d 256, 263 (D.D.C. 2014) ("[I]t is well settled that a *qui tam* action may not be brought by a *pro se* plaintiff.").  This route to dismissal will be available to other Defendants in the event they are subject to the Court's personal jurisdiction.

C.    Vexatious-Litigant Request

Defendant separately asks this Court to issue a pre-filing injunction against Zhang that would block him from "bringing any action against SeedTrust, its agents, or its employees in any federal court without first being granted leave of court from this Court."  MTD at 20.  The Court, although sympathetic, ultimately declines the invitation.

To be sure, federal courts possess inherent authority to sanction wayward parties in service of courts' "integrity" and the "orderly and expeditious administration of justice." Klayman v. Porter, 104 F.4th 298, 306 (D.C. Cir. 2024) (quotation marks omitted).  Still, a pre-filing injunction restricting a litigant's access to the courts is an "extreme remedy" and "a tool of last resort," reserved for "rare and egregious cases."  Id. (quotation marks omitted).  Our Circuit has planted a few guideposts to dictate when the courthouse doors may be closed to litigants. First, a court must ensure that the party received notice and an opportunity to be heard.  In re Powell, 851 F.2d 427, 431 (D.C. Cir. 1988); see also Unitronics (1989) (R"G) Ltd. v. Gharb, 85 F. Supp. 3d 118, 130 (D.D.C. 2015).  Second, courts examine "the number . . . of the filings" as evidence of how vexatious a litigant is.  In re Powell, 851 F.2d at 431.  Finally, the overall

8

inquiry focuses on whether the filing is frivolous or harassing.  Id.; Duru v. Mitchell, 289 F.

Supp. 3d 112, 117 (D.D.C. 2018).

The Court addresses each item in turn, noting the substantial overlap among them.

1.    *Notice and Opportunity to Be Heard*

A court may not issue a pre-filing injunction without offering notice and an opportunity

to be heard.  See In re Powell, 851 F.2d at 431.  That box is typically checked where the litigant

receives a motion to dismiss that asks the court to enjoin him from making future filings.  See,

e.g., Smith v. Scalia, 44 F. Supp. 3d 28, 46 (D.D.C. 2014).  Plaintiff's filing of memoranda

opposing such a motion also evidences notice.  See, e.g., Rodriguez v. Shulman, 844 F. Supp. 2d

1, 15 (D.D.C. 2012).  Here, there can be little question that Zhang has been given appropriate

notice: he received SeedTrust's Motion to Dismiss — which asked this Court to bar him from

future filings — and indeed filed an Opposition.

2.    *Number of Filings*

The next consideration is volume.  While there is no fixed numerical threshold, courts in

this district have supplied useful benchmarks.  On one end of the spectrum, six and 13 suits have

been deemed too few.  See Klayman, 104 F.4th at 307 (six); In re Powell, 851 F.2d at 432 (13).

On the other end, courts have issued injunctions where litigants filed dozens or hundreds of

actions.  See, e.g., United States ex rel. Yelverton v. Fed. Ins. Co., 831 F.3d 585, 586 (D.C. Cir.

2016) (more than 40 lawsuits, adversary proceedings, or appeals and over 150 motions); Urban

v. United Nations, 768 F.2d 1497, 1499 (D.C. Cir. 1985) ("28 separate appeals" in three months,

followed by another 27 appeals and 50 motions).

Here, SeedTrust identifies six suits filed by Zhang in this and other courts: the instant

action, the D.C. Superior Court action that immediately preceded it, a separate D.C. Superior

Court suit, two additional actions in this district, and a case in New York Civil Court.  See MTD at 17–20 (citing Zhang v. Hotel Fortune, 2025 WL 2840263 (D.D.C. Oct. 7, 2025) (dismissed); Dixon, No. 2025-2137, Order (same); Zhang v. Citizen Bank, No. 2025-1334, Order (D.C. Super. Ct. Feb. 2, 2026) (affirming default judgment for defendant); Zhang v. Fam. Sols. Int'l Co., No. 10713-24 (N.Y. Civ. Ct. filed May 3, 2024)); id. at 3 n.1 (separately referencing Zhang v. Bao, No. 26-1108 (D.D.C. filed Apr. 1, 2026)); Exhs. at ECF pp. 20–82.  As an initial matter, two of the suits remain active and therefore cannot be counted for purposes of the numerical inquiry.  See In re Powell, 851 F.2d at 431–32 (cautioning that "district court[s] should be careful not to review pending cases" when "making a determination as to the frivolousness of numerous actions").

The Court therefore considers only the three dismissed actions together with this one.  A total of four lawsuits, while not insignificant, falls well short of the barrage of litigation that typically warrants an injunction.  True, courts on occasion have acted upon a relatively small number of suits.  In those cases, however, it was the duplicative substance of the filings that tipped the scales.  See, e.g., Davis v. United States, 569 F. Supp. 2d 91, 93, 99 (D.D.C. 2008) (four "essentially identical" suits); Caldwell v. Obama, 6 F. Supp. 3d 31, 41, 51–52 (D.D.C. 2013) (fifth complaint raising "same allegations against the same parties").  Such duplication is not present here.  Of the concluded suits Defendant identifies, one concerns an unrelated dispute. See Citizen Bank, No. 2025-1334, Order at 1–3 (challenging interest rates charged by bank). The second does relate to the surrogacy arrangement but alleges an entirely different theory — that government officials kidnapped Plaintiff's child.  See Hotel Fortune, 2025 WL 2840263, at *1.  That leaves Dixon, which only partially overlaps with this case, as Plaintiff asserts additional claims here.  Cf. No. 2025-2137, Order at 2.

Overall, then, the volume factor does not weigh in favor of an injunction.

3.    *Frivolousness*

Defendant likewise fails to demonstrate the degree of frivolousness necessary to justify a vexatious-litigant finding.  Our Circuit has reserved the "frivolous" label for complaints that are "irrational," "incoherent," or "complete[ly] lack[ing]" in "substantive allegations."  Klayman, 104 F.4th at 308 (quotation marks omitted).  A few cases illustrate the sort of claims that fit this category.  One plaintiff deemed vexatious sought an emergency stay of a U.S. president's inauguration while alleging residency in the "Milkyway Galaxy" as a basis for jurisdiction. Urban, 768 F.2d at 1499–1500.  In a separate action, he demanded that an "unspecified" entity finance his efforts to "battle against injustice."  Id. at 1499.  Another litigant requested $501 billion in damages for purported misconduct by the FBI.  Dhakal v. FBI, 2026 WL 785286, at *1–2 (D.D.C. Mar. 20, 2026).

That degree of implausibility is not present here.  True, had it reached the merits, the Court might well have concluded that Plaintiff's claims founder as a matter of law.  But legal insufficiency and frivolousness are not synonymous.  If little else, Zhang invokes actual statutes in connection with a real surrogacy arrangement involving identifiable parties.  See, e.g., Hobley v. KFC U.S. Props., Inc., 2006 WL 249981, at *7 (D.D.C. Jan. 31, 2006) ("Though [complaints] lack a cognizable legal theory[,] . . . they evidence the lack of legal training common of *pro se* plaintiffs more than they resemble the irrational, incoherent, or fanciful complaints that have traditionally been deemed frivolous.").

To be sure, Defendant persuasively notes that the court in one of Zhang's other suits described his allegation of kidnapping by a municipal agency as "clearly fantastic, delusional, and essentially fictitious."  Hotel Fortune, 2025 WL 2840263, at *1 (quotation marks omitted);

11

MTD at 19 n.10.  But the claims of fraud before this Court sound in a less fantastical register.

And one frivolous suit in an otherwise limited litigation history is insufficient to warrant a pre-

filing injunction.  See Klayman, 104 F.4th at 308 (holding that existence of "only one" suit

previously deemed frivolous did not, alone, justify injunction).

### 4.    *Harassment*

Nor is the harassment element satisfied.  For this criterion, courts examine the number,

similarity, tone, and purpose of litigants' filings.  See, e.g., Kaempfer v. Brown, 684 F. Supp.

319, 324–26 (D.C. Cir. 1988) (issuing injunction where defendants filed "myriad of motions" not

for purpose of "vigorously promot[ing] their legal rights" but instead for "harassive purpose");

Smith, 44 F. Supp. 3d at 47–48 (same where filings were voluminous and contained "abusive"

rhetoric) (quotation marks and citation omitted); Mikkilineni v. Penn Nat'l Mut. Cas. Ins. Co.,

271 F. Supp. 2d 142, 148–49 (D.D.C. 2003) (same where plaintiff "filed similar claims

repeatedly").

Here, Plaintiff has not (yet) flooded the courts with an excessive number of conclusively

meritless claims.  For one, as explained above, he has not consistently recycled identical theories

against identical defendants.  See *supra* Section III.C.2.  Nor has he engaged in the sort of

excessive motions practice within individual actions that courts have noted.  Compare MTD at

18 ("Plaintiff filed at least two submissions" following complaint in both this and another case),

with Caldwell, 6 F. Supp. 3d at 50 (plaintiff submitted 100 filings across five actions), and Hall

v. McAleenan, 2019 WL 2569914, at *3 (D.D.C. June 21, 2019) (plaintiff filed 19 motions in

one suit).  Further, while Zhang's tone is occasionally combative — *e.g.*, attributing his filing of

this action to Defendant's "attitude," Compl. at ECF p. 10, and characterizing Defendant's

Motion as "disorganized[] and incoherent," Opp. at ECF p. 1 — his remarks fall short of the

12

inflammatory rhetoric present in other cases.  Cf. Smith, 44 F. Supp. 3d at 33 n.4, 47 & n.3 (citing repeated threats of violence, *ad hominem* attacks, and vulgarities).

The Court appreciates Defendant's frustration and shares its interest in the orderly and efficient administration of justice.  The Court is similarly troubled by indications that Plaintiff has a penchant for forum and claim shopping.  See Exhs. at ECF p. 84 (Plaintiff stating that, if Defendant does not settle or agree to transfer case, he will "consider applying different laws and pursuing different legal liabilities" in new court); MTD at 17, 19.  Measured against the governing caselaw, however, that conduct alone is insufficient to justify shutting Zhang out of the courts.

*     *     *

In sum, Plaintiff may indeed be employing dubious litigation tactics, but he has not yet crossed the line into vexatiousness.  The Court therefore declines to issue a pre-filing injunction.

## IV.     Conclusion

For the foregoing reasons, the Court will dismiss this action as to SeedTrust for lack of personal jurisdiction.  It will further deny SeedTrust's request to declare Plaintiff a vexatious litigant.  A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: July 23, 2026

13